**Maria MOE, Raoul Roe, and Ricardo Roe, an infant, by his father Raoul Roe, on behalf of themselves and all other persons similarly situated, Plaintiffs,**

v.

**David DINKINS, individually, and as City Clerk of New York City, on behalf of himself and all town and city clerks in New York State, and David Axelrod, individually, and as New York State Commissioner of Health, Defendants.**

**No. 80 Civ. 1577 (CBM).**

United States District Court,
S. D. New York.

Aug. 17, 1981.

---

Washington Square Legal Services, Inc. by Janet M. Calvo, Arlene Kanter (Legal Intern), New York City, for plaintiffs.

Allen G. Schwartz, Corp. Counsel by Stephen P. Kramer, Marian A. Campbell, New York City, for defendant David Dinkins.

Robert Abrams, Atty. Gen., of N. Y. by Robert Schack, Florence Abrams, Asst. Attys. Gen., New York City, for defendant Axelrod.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiffs Maria Moe, Raoul Roe and Ricardo Roe seek a judgment declaring unconstitutional, and enjoining the enforcement of, the parental consent requirement of New York Domestic Relations Law §§ 15.2 and 15.3 (Section 15). Section 15.2 provides that all male applicants for a marriage license between ages 16 and 18 and all female applicants between ages 14 and 18 must obtain "written consent to the marriage from both parents of the minor or minors or such as shall then be living. . . ." Section 15.3 requires that a woman between ages 14 and 16 obtain judicial approval of the marriage, as well as the parental consent required by Section 15.2.

This action is now before the court on plaintiffs' motion for summary judgment declaring Section 15 unconstitutional and enjoining its enforcement. Plaintiffs' motion came on for hearing after this case had been remanded to this court by the Court of Appeals for this Circuit. The Court of Appeals reversed this court's initial determination that it should abstain from deciding the constitutionality Section 15 until the statute had been construed by the New York State courts. *Moe v. Dinkins*, 635. F.2d 1045 (2d Cir. 1980).

Prior to the hearing on plaintiffs' motion for summary judgment, this court filed a memorandum opinion and order which granted in part plaintiffs' motion to certify a plaintiff and a defendant class. *Moe v. Dinkins*, No. 80 Civ. 1577 (S.D.N.Y. June 29, 1981).

The plaintiff class consists of:

persons who wish to marry in New York State but cannot obtain a marriage license or judicial approval to obtain a marriage license because they, or the persons whom they seek to marry, lack parental consent as required by New York Dom.Rel.Law §§ 15.2 and 15.3.

The plaintiff class is represented by Maria Moe and Raoul Roe.

The defendant class consists of:

all town and city clerks in New York State.

All such clerks are required by New York State law to enforce the parental consent provisions of New York Dom.Rel.Law §§ 15.2 and 15.3.

The defendant class is represented by David Dinkins, City Clerk of New York City. David Axelrod, New York State Commissioner of Health, is also a defendant in this action.

Plaintiff Raoul Roe was eighteen years old when this action was commenced. Plaintiff Maria Moe was fifteen years old. Plaintiff Ricardo Roe is their one year old son who was born out of wedlock. Plaintiffs live together as an independent family unit. In late November, 1978, Maria became pregnant by Raoul and in April, 1979, they moved into an apartment together. Maria requested consent from her mother, a widow, to marry Raoul, but Mrs. Moe refused, allegedly because she wishes to continue receiving welfare benefits for Maria. Maria and Raoul continue to be prevented from marrying because of Mrs. Moe's failure to give consent to the marriage as required by Section 15. Maria and Raoul allege that they wish to marry in order to cement their family unit and to remove the stigma of illegitimacy from their son, Ricardo.

In addition, Cristina Coe and Pedro Doe have moved to intervene as plaintiffs and additional class representatives in this action, pursuant to Fed.R.Civ.P. 24(b)(2), and for an order allowing them to proceed with this action under pseudonyms and without appointment of a guardian ad litem.

For the reasons discussed below, the motion for intervention is granted. Plaintiffs' motion for summary judgment declaring Section 15 unconstitutional is denied. This court holds that the parental consent requirement of Section 15 does not violate plaintiffs' constitutional rights.

*Intervention*

Proposed plaintiff-intervenor Cristina Coe is fifteen years old. Proposed plaintiff-intervenor Pedro Doe is seventeen years old. Cristina is eight months pregnant with Pedro's child. Cristina and Pedro reside in the home of Pedro's father and step-mother. In January 1981, when Cristina discovered she was pregnant, she and Pedro informed Cristina's mother of their desire to have their child and to marry. Mrs. Coe refused to give Cristina her consent to marry and arranged for Cristina to have an abortion. Cristina refused to keep the appointments her mother made for her at the abortion clinic. Consequently, Mrs. Coe told Cristina she wanted to have nothing more to do with her and that she was leaving the country to live in the Dominican Republic.

Cristina and Pedro wish to marry to express their commitment to and caring for each other, to legitimate their relationship, and to raise their child in accord with their beliefs in a traditional family setting sanctioned by law. They wish to marry before their child is born so that he or she will never have the stigma of illegitimacy attached to his or her life. However, Cristina and Pedro are precluded from petitioning for judicial approval to obtain a marriage license by operation of Section 15 because Mrs. Coe, Cristina's custodial parent, refuses to consent to the marriage.

Rule 24(b)(2) of the Federal Rules of Civil Procedure allows permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common. . . ." The rule further provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The claims of Cristina and Pedro present the same legal issue presented by the present plaintiffs—whether the parental consent requirement of Section 15 is constitutional. Like plaintiffs Maria Moe and Raoul Roe, Cristina and Pedro wish to marry in order to cement their family unit and raise their child without the stigma of illegitimacy. Like Maria and Raoul, Cristina and Pedro are prevented from marrying by the parental veto imposed by Section 15. Intervention will not result in any delay or prejudice to the rights of the original parties or to the orderly process of this court.

In addition, plaintiffs argue that the intervention of Pedro and Cristina will present the court with a more complete picture of the impact of Section 15's parental consent requirement and will add to the representativeness of the named class members. Section 15 requires that Maria, who is now sixteen, must have parental consent to obtain a marriage license. Section 15 requires that Cristina must obtain judicial approval to marry, but precludes her from petitioning for judicial approval unless her parent has consented. While Maria has already borne a child, Cristina is now expecting a baby and is thus in a position to totally avoid the stigma of illegitimacy for her child.

Defendants object to the intervention of Cristina and Pedro on two grounds. First, defendants contend that Cristina and Pedro do not belong in the plaintiff class because New York law provides them with a means to obtain a marriage license without Cristina's mother's consent. Second, defendants argue that plaintiffs' motion for intervention should be denied because Cristina and Pedro have failed to reveal their true identities to defendants. The court finds both objections to be without merit.

Defendants state that under the New York Social Services Law a child less than eighteen years old may be declared abandoned by his or her parent. In that case, defendants contend, the Surrogate may grant letters of guardianship for the purpose of consenting to the teenager's marriage if marriage would be in the teenager's

best interests. Defendants' contention is contrary to the ruling of the Court of Appeals in *Moe v. Dinkins, supra*, 635 F.2d at 1049, that in New York "the consent of a court-appointed guardian cannot bypass the statutory requirement of parental consent, regardless of the unfairness created by a refusal to grant permission." In that decision, the Court of Appeals rejected each of the alternative constructions of Section 15 posed by defendants which might allow an exception to the parental consent requirement.

■ Cristina's and Pedro's failure to reveal to defendants their true identities does not bar their intervention in this action. It is common for plaintiffs, both minors and those over the age of majority, to be permitted to proceed under a pseudonym where the case concerns matters of a highly sensitive and personal nature such as marriage and illegitimacy. *See, e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (abortion); *Doe v. Lavine*, 347 F.Supp. 357 (S.D.N.Y. 1972) (identification of putative fathers of illegitimate children); *Child v. Beame*, 412 F.Supp. 593 (S.D.N.Y.1976) (minors' suit against foster care agencies).

■ Defendants claim that the secrecy surrounding Cristina and Pedro precludes them from verifying the standing of Cristina and Pedro to challenge the constitutionality of Section 15. However, standing depends on what the complaint alleges. *H. L. v. Matheson*, 450 U.S. 398, 413, 101 S.Ct. 1164, 1174, 67 L.Ed.2d 388 (1981) (Powell, J., concurring); *Warth v. Seldin*, 422 U.S. 490, 498, 501, 95 S.Ct. 2197, 2204, 2206, 45 L.Ed.2d 343 (1975). The proposed intervenor complaint filed by Cristina and Pedro alleges sufficient facts to demonstrate that they have the personal stake in the outcome of the controversy needed to confer standing. *See Warth v. Seldin, supra*, 422 U.S. at 498, 95 S.Ct. at 2204. In addition, both proposed intervenors have submitted sealed affidavits, signed in their true names, which attest to the accuracy of the allegations of the complaint. Plaintiffs' attorney has also filed an affidavit which states that Cristina and Pedro are real people who she has interviewed. Plaintiffs' attorney's signature on the intervenor complaint further warrants that, to the best of her knowledge, the allegations are true. *See* Fed.R. Civ.P. 11.

■ For these reasons, the court holds that Cristina Coe and Pedro Doe may intervene in this action and may proceed under pseudonyms. Their request to proceed without the appointment of a guardian ad litem is also granted since their interests in the litigation are adequately protected by representation by competent counsel. *See Baird v. Bellotti*, 393 F.Supp. 847, 850 n.5 (D.Mass.1975), *vacated on other grounds*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

Since the facts which the defendants dispute are not material to the constitutional question presented or to the relief requested by plaintiffs, the court finds that summary judgment is appropriate. Plaintiffs do not seek an order mandating their marriage. They seek only a determination that the parental consent requirement is unconstitutional so that they may present to the appropriate official the facts relevant to a determination of whether a marriage license should issue. Accordingly, the court now proceeds to consider the merits of plaintiffs' challenge to Section 15.

*The Merits*

Plaintiffs contend that Section 15 of the New York Domestic Relations Law,[1] requir-

---

1. The pertinent parts of Section 15 are as follows:

    (2) If it shall appear upon an application of the applicant as provided in this section or upon information required by the clerk that the man is under eighteen years of age and is not under sixteen years of age, or that the woman is under the age of eighteen and not under fourteen years of age, then the town or city clerk before he shall issue a license shall require the written consent to the marriage from both parents of the minor or minors or such as shall then be living, or if the parents of both are dead, then the written consent of the guardians of such minor or minors. If one of the parents has been missing and has

ing parental consent for the marriage of minors between the ages of fourteen and eighteen, deprives them of the liberty which is guaranteed to them by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.[2]

A review of Supreme Court decisions defining liberties guaranteed by the Fourteenth Amendment reveals that activities relating to child-rearing and education of children, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), procreation, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), abortion, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), family relations, *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), contraception, *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), and, most recently, marriage, *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), are constitutionally protected rights of individual privacy embodied within the concept of liberty which the Due Process Clause of the Fourteenth Amendment was designed to protect.

However, neither *Zablocki* nor its predecessors, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), arose in the context of state regulation of marriages of minors.

In that respect, this is a case of first impression.

■ While it is true that a child, because of his minority, is not beyond the protection of the Constitution, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court has recognized the State's power to make adjustments in the constitutional rights of minors. *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (criminal statute prohibiting the sale of obscene material to minors whether or not obscene to adults upheld despite First Amendment challenge); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (child labor law prohibiting minors from selling merchandise on the streets upheld despite Jehovah Witness' challenge based on religious freedom). "The power of the State to control the conduct of children reaches beyond the scope of authority over adults." *Id.* at 168, 64 S.Ct. at 443. This power to adjust minors' constitutional rights flows from the State's concern with the unique position of minors. In *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the Court noted "three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed and mature manner; and the importance of the parental role in child-rearing." *Id.* at 634, 99 S.Ct. at 3043.

not been seen or heard from for a period of one year preceding the time of the application for the license, although diligent inquiry has been made to learn the whereabouts of such parent, the town or city clerk may issue a license to such minor upon the sworn statement and consent of the other parent. If the marriage of the parents of such a minor has been dissolved by decree of divorce or annulment, the consent of the parent to whom the court which granted the decree has awarded custody of such minor shall be sufficient. If there is no parent or guardian of the minor or minors living to their knowledge then the town or city clerk shall require the written consent for the marriage of the person under whose care and government the minor or minors may be before a license shall be issued. If a parent of such minor has been adjudicated an incompetent, the town or city clerk may issue a license to such minor upon the production of a certified copy of such

judgment so determining and upon the written consent of the other parent. N.Y.Dom.Rel.Law § 15 (14 McKinney).

2. There is no legislative history on Section 15 as amended in 1907 to include the licensing and parental consent requirement. New York State's Governor's Bill Jackets from 1906 to 1921 were destroyed in a fire. There is nothing in the New York Senate or Assembly Journals or Documents regarding the parental consent requirement. The New York Times mentions, albeit briefly, that Senator Wood, the sponsor of the bill, stated that "[t]his bill will correct many evils. I think that there would be fewer runaway couples," New York Times, June 5, 1907, at 2, col. 2, and "enforcement of the law will prevent runaway marriages while the contracting parties are immature." New York Times, December 31, 1907, at 6, col. 3.

Likewise, marriage occupies a unique position under the law. It has been the subject of extensive regulation and control, within constitutional limits, in its inception and termination and has "long been regarded as a virtually exclusive province of the State." *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975).

■■ While it is evident that the New York law before this court directly abridges the right of minors to marry, *in the absence of parental consent*, the question is whether the State interests that support the abridgement can overcome the substantive protection of the Constitution. The unique position of minors and marriage under the law leads this court to conclude that Section 15 should not be subjected to strict scrutiny, the test which the Supreme Court has ruled must be applied whenever a state statute burdens the exercise of a fundamental liberty protected by the Constitution. Applying strict scrutiny would require determination of whether there was a compelling state interest and whether the statute had been closely tailored to achieve that state interest. *See, e.g., Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The compelling state purpose necessitated by application of the strict scrutiny test "would cast doubt on a network of restrictions that the States have fashioned to govern marriage and divorce." *Zablocki v. Redhail*, 434 U.S. at 399, 98 S.Ct. at 688 (Powell, J., concurring). It is this court's view that Section 15 should be looked at solely to determine whether there exists a rational relation between the means chosen by the New York legislature and the legitimate state interests advanced by the State. *Cf. Ginsberg v. New York*, 390 U.S. at 629, 88 S.Ct. at 1274 (rationality test employed in area of protected freedom). Section 15 clearly meets this test.

■ The State interests advanced to justify the parental consent requirement of Section 15 include the protection of minors from immature decision-making and preventing unstable marriages. The State possesses paternalistic power to protect and promote the welfare of children who lack the capacity to act in their own best interest. *See Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). The State interests in mature decision-making and in preventing unstable marriages are legitimate under its *parens patriae* power.

■ An age attainment requirement for marriage is established in every American jurisdiction. The requirement of parental consent ensures that at least one mature person will participate in the decision of a minor to marry. That the State has provided for such consent in Section 15 is rationally related to the State's legitimate interest in light of the fact that minors often lack the "experience, perspective and judgment" necessary to make "important, affirmative choices with potentially serious consequences." *Bellotti v. Baird, supra*, 443 U.S. at 635–36, 99 S.Ct. at 3043–44.

■ Yet, plaintiffs fault the parental consent requirement of Section 15 as possibly arbitrary, suggesting that courts, as non-interested third parties, are in a better position to judge whether a minor is prepared for the responsibilities that attach to marriage. Although the possibility for parents to act in other than the best interest of their child exists, the law presumes that the parents "possess what the child lacks in maturity" and that "the natural bonds of affection lead parents to act in the best interest of their children." *Parham v. J. R.*, 442 U.S. 584, 610, 99 S.Ct. 2493, 2508, 61 L.Ed.2d 101 (1979) (procedure for voluntary commitment of children under eighteen to state hospitals by their parents held constitutional). "That the governmental power should supercede parental authority in all cases because some parents" may act in other than the best interest of their children is "repugnant to the American tradition." *Id.* at 602–03, 99 S.Ct. at 2504. *See also Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (state compelled attendance in formal high school to age sixteen unreasonably interferes with interest of Amish parents in providing their children with vocational education under

parental guidance); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (state compelled attendance in public school from age eight to sixteen unreasonably interferes with the interest of parents in directing the rearing of their offspring); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (statute prohibiting languages other than English from being taught to grade school children unreasonably interferes with the power of parents to control the education of their own children).

Plaintiffs also contend that Section 15 denied them the opportunity to make an individualized showing of maturity and denies them the only means by which they can legitimize their children and live in the traditional family unit sanctioned by law. On the other hand, New York's Section 15 merely delays plaintiffs' access to the institution of marriage. *Cf. Sosna v. Iowa*, 419 U.S. at 406, 95 S.Ct. at 560 (durational residency requirement of one year for divorce proceedings held constitutional). Moreover, the prohibition does not bar minors whose parents consent to their child's marriage. Assuming *arguendo* that the illegitimacy of plaintiff Moe's child and plaintiff Coe's yet unborn child is a harm, it is not a harm inflicted by Section 15. It is merely an incidental consequence of the lawful exercise of State power. The illegitimacy of plaintiffs' children, like the denial of marriage without parental consent, is a temporary situation at worst. A subsequent marriage of the parents legitimatizes the child, thereby erasing the mark of illegitimacy. *Estate of Elson*, 94 Misc.2d 983, 405 N.Y.S.2d 984 (1978). The rights or benefits flowing from the marriage of minors are only temporarily suspended by Section 15. Any alleged harm to these rights and benefits is not inflicted by Section 15, but is simply an incidental consequence of the valid exercise of State power.

The fact that the State has elected to use a simple criterion, age, to determine probable maturity in the absence of parental consent, instead of requiring proof of maturity on a case by case basis, is reasonable,

even if the rule produces seemingly arbitrary results in individual cases. "Simply because the decision of a parent is not agreeable to a child or because there is a [possible stigmatization of the child] does not automatically transfer power to make the decision from parents to some other agency or officer of the state." *Parham v. J. R.*, 442 U.S. at 603, 99 S.Ct. at 2504.

Plaintiffs' reliance on the abortion and contraception cases is misplaced. *See Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (state may not impose a blanket prohibition requiring parental or judicial consent as a condition for abortion of an unmarried minor); *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (state may not impose a blanket prohibition on right of minors to obtain contraceptives); *Planned Parenthood v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (state may not impose a blanket prohibition requiring consent of parent as a condition for abortion of an unmarried minor during the first twelve weeks of pregnancy). These cases can be distinguished from the instant case in that

> a pregnant minor's options are much different than those facing a minor in other situations, *such as deciding whether to marry*. A minor not permitted to marry before the age of maturity is required simply to postpone her decision. She and her intended spouse may preserve the opportunity for a later marriage should they continue to desire it.

*Bellotti v. Baird, supra*, 443 U.S. at 642, 99 S.Ct. at 3047 (emphasis added). Giving birth to an unwanted child involves an irretrievable change in position for a minor as well as for an adult, whereas the temporary denial of the right to marry does not. Plaintiffs are not irretrievably foreclosed from marrying. The gravamen of the complaint, in the instant case, is not total deprivation but only delay.

This court concludes that Section 15's requirement of parental consent is rationally related to the State's legitimate interests in mature decision-making with respect to

marriage by minors and preventing unstable marriages. It is also rationally related to the State's legitimate interest in supporting the fundamental privacy right of a parent to act in what the parent perceives to be the best interest of the child free from state court scrutiny. Section 15, therefore, does not offend the constitutional rights of minors but represents a constitutionally valid exercise of state power.

Accordingly, plaintiffs' motion for summary judgment in their favor is denied and summary judgment is entered in favor of defendants.