PLANNED PARENTHOOD ASSOCIATION OF UTAH, Dan L. Chichester, M.D., Howard S. Berk, M.D., and John Doe, Plaintiffs,

v.

Scott MATHESON, Governor of the State of Utah; and David L. Wilkinson, Attorney General of the State of Utah, Defendants.

Civ. No. C–83–0607W.

United States District Court, D. Utah, C.D.

Dec. 30, 1983.

Nan D. Hunter, Janet Benshoof, American Civil Liberties Union Found., New York City, Jeffery R. Oritt, Wayne McCormack, Salt Lake City, Utah, for plaintiffs.

Paul M. Warner, Douglas P. Balvin, Asst. Attys. Gen., Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

In this lawsuit, Planned Parenthood, two doctors and a minor male (the plaintiffs) challenge the validity of the Utah law [1] which requires that "[a]ny person before providing contraceptives to a minor shall notify ... the minor's parents or guardian of the service requested to be provided to such minor." Utah Code Ann. 76–7–325 (Supp.1983) (hereinafter cited as H.B. 343). On May 9, 1983, the court entered an order temporarily enjoining Governor Matheson and Attorney General Wilkinson (the defendants) from enforcing or implementing H.B. 343. The plaintiffs filed a motion for summary judgment on September 12, 1983 and the defendants filed a cross-motion for summary judgment on October 31, 1983. Both parties submitted briefs in support of their motions and on December 5, 1983 presented oral argument to the court. At the conclusion of the hearing, the court took the matter under advisement. Since then, the court has reread with care the parties' memoranda and various authorities cited therein. In addition, the court has read the affidavits submitted by the parties in conjunction with their motions for summary judgment and the earlier motion for a temporary restraining order. Being now fully advised, the court renders this memorandum decision and order.

The plaintiffs advance two arguments in support of their claim that H.B. 343 is invalid. First, the plaintiffs argue that

---

1. In full H.B. 343 provides:

76–7–325 (1) Any person before providing contraceptives to a minor shall notify, whenever possible, the minor's parents or guardian of the service requested to be provided to such minor. Contraceptives shall be defined as appliances (including, but not limited to intrauterine devices), drugs, or medicinal preparations intended or having special utility for prevention of contraception.

(2) Any person in violation of this section shall be guilty of a class C misdemeanor.

76–7–321 (3) "Minor" means any person under the age of 18 who is not otherwise emancipated, married or a member of the armed forces of the United States.

H.B. 343 directly conflicts with Title X of the Public Health Service Act, 42 U.S.C. § 300, *et seq.*, and with the AFDC and Medicaid programs found in the Social Security Act. *Id.* §§ 601, *et seq.;* §§ 1396, *et seq.* Second, the plaintiffs argue that H.B. 343 impermissibly infringes upon the constitutionally protected right of minors to decide whether to bear or to beget children. The defendants argue that H.B. 343 does not conflict with the express language of the federal laws cited by the plaintiffs. The defendants also argue that H.B. 343 does not burden any constitutionally protected rights, or that if it does, H.B. 343 properly balances the minor's privacy rights and the parents' rights to be involved in their children's decision making concerning contraceptive use.

In considering these motions, the court is mindful of the burden a party seeking summary judgment must meet. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). However, when a motion for summary judgment is supported by affidavits, the adverse party may not rely upon the allegations of the complaint or answer. Instead, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Rule 56(e).

Applying those rules to this case, the court concludes that the record establishes as undisputed fact the following.

1. Planned Parenthood provides family planning services to patients including unmarried, unemancipated minors who are not military personnel. Those services include the distribution of prescription and non-prescription contraceptives to male and female patients. Planned Parenthood performs extensive medical examinations on all family planning patients and also provides individual and group counseling for minors seeking family planning services. In addition, Planned Parenthood conducts educational programs for parents that include parent-child counseling and workshops designed to improve parents' skills in communicating with and teaching their children about human sexual relationships.

2. Doctors Chichester and Berk are physicians who are licensed to practice in Utah and are board certified in obstetrics and gynecology. Both doctors treat patients who are unmarried, unemancipated, non-military minors seeking confidential family planning services. As part of those services Doctors Chichester and Berk prescribe contraceptives for their minor patients on a confidential basis. Dr. Chichester is a certified Medicaid provider and he treats minor patients who are Medicaid recipients and who would be effected by H.B. 343.

3. John Doe is an unmarried, unemancipated, non-military minor who resides in Utah, is sexually active and uses contraceptives. John Doe has not informed his parents that he is sexually active or that he uses contraceptives, nor does he desire to do so. John Doe would not cease to be sexually active if H.B. 343 is implemented, but due to the parental disclosure requirement he would discontinue his use of contraceptives.

4. Scott Matheson, Governor of Utah, is responsible for the execution of the laws of Utah.

5. David Wilkinson, Attorney General of Utah, is responsible for defending all causes to which the state or any officer thereof in an official capacity is a party and for exercising charge as attorney of all civil legal matters in which the state is in any way interested.

6. Planned Parenthood is a current grantee of federal family planning funds under Title X of the Public Health Services Act.[2]

---

**2.** The record contains the affidavit of Barbara Baldwin, Executive Director of Planned Parenthood Association of Utah, which indicates that Planned Parenthood is a current applicant and past grantee of Title X funds. The court takes judicial notice of the fact that following the granting of a preliminary injunction in *Doe v. Utah*, Civil No. C–83–0379W, the Department of

7. The majority of the minors who seek contraceptive services from Planned Parenthood have informed their parents or another family member of their sexual activity prior to visiting Planned Parenthood.

The Preemption Arguments

■ When confronted with the argument that a state family law[3] is preempted by a federal law, the court must determine whether "Congress has 'positively required by direct enactment' that state law be preempted," *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904)), and whether the state law "do[es] 'major damage' to 'clear and substantial' federal interests." *Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808 (quoting *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507, 16 L.Ed.2d 404 (1966)). However,

> [n]otwithstanding the limited application of federal law in the field of domestic relations generally, this Court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights.

*Ridgway v. Ridgway,* 454 U.S. 46, 54, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981) (citations omitted).

■ The Public Health Service Act and the Social Security Act are comprehensive federal programs intended to provide basic health care services to eligible recipients. In Title X of the Public Health Service Act (Title X), Congress provided that:

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.

42 U.S.C. § 300(a). The Aid to Families With Dependent Children (AFDC) program of the Social Security Act requires state plans to

> provide (A) for the development of a program, ..., for preventing or reducing the incidence of birth out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that in all appropriate cases (including minors who can be considered to be sexually active) family planning services are offered to them and are provided promptly ... to all individuals voluntarily requesting such services....

*Id.* § 602(a)(15)(A). Finally in the Medicaid program of the Social Security Act Congress defined "medical assistance" as

> payment of part or all of the cost of the following care and services ...
>
> .      .      .      .      .
>
> family planning services and supplies furnished ... to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies....

*Id.* § 1396d(a)(4)(C). The express terms of each of those provisions demonstrate that Congress intends the Title X, AFDC and Medicaid programs to provide family planning services to sexually active minors if such services are voluntarily requested by those minors. By including that requirement in each program, Congress established a federal policy that "prevents the

---

Health and Human Services restructured the 1983 grant to Utah and that Planned Parenthood again is receiving funds under that program.

**3.** The plaintiffs do not concede that H.B. 343 is a family law. Plaintiffs Memorandum in Opposition to the Defendants' Motion for Summary Judgment, 3 n. 2. The court will assume that H.B. 343 is a family law and will apply the stricter preemption test applicable to such laws in resolving the pending motions.

vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy." *Hisquierdo,* 439 U.S. at 584, 99 S.Ct. at 809. Once Congress has determined that certain services shall be provided to sexually active minors when voluntarily requested, the states may not adopt additional requirements that are inconsistent with Congress' mandate. *Id.* at 584–85, 99 S.Ct. at 809–10.

■ The defendants argue that H.B. 343 does not preclude minors from obtaining contraceptives; instead they contend that it requires only that the minor's parents be notified of the services being requested. Notice must be given before the contraceptives may be distributed to the minor. Thus, although H.B. 343 does not directly prohibit minors from obtaining the services that they are entitled by federal law to receive upon voluntary request, the state law does make notification an additional prerequisite to receipt of the services. To determine whether that additional requirement does "major damage" to "clear and substantial" federal interests, the court must consider Congress' intent in mandating that family planning services be provided to minors who voluntarily request them.

Since enacting Title X in 1970, "Congress frequently [has] expressed its increasing concern about the still unmet family planning needs of sexually active teenagers in this country." *Planned Parenthood Federation of America, Inc. v. Heckler,* 712 F.2d 650, 653 (D.C.Cir.1983) (citing H.R. Rep. No. 1161, 93d Cong., 2d Sess. 14 (1974); S.Rep. No. 29, 94th Cong., 1st Sess. 55 (1975) U.S.Code Cong. & Admin.News 1975, p. 469). In 1978, Congress amended Title X by adding the requirement that Title X projects offer "a broad range of acceptable and effective family planning methods and services (including ... services for adolescents)." 42 U.S.C. § 300(a). The Senate Report accompanying that legislation explained that Congress intended to place "a special emphasis on preventing unwanted pregnancies among sexually active adolescents." S.Rep. No. 822, 95th Cong., 2d Sess. 24 (1978).

In 1981, Congress again amended Title X, adding on that occasion the requirement that "[t]o the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection." 42 U.S.C. § 300(a). Pursuant to that language, the Secretary of Health and Human Services proposed and adopted a regulation that required Title X grantees to notify a parent of an unemancipated minor to whom contraceptives were prescribed of that action within ten days after the contraceptives initially were prescribed.[4] That regulation was challenged by Planned Parenthood Federation of America. The United States Court of Appeal for the District of Columbia, after conducting a thorough review of Title X's legislative history, concluded that

> Congress' obvious awareness of the administrative practice as to confidentiality as well as its failure to change this practice when presented with the opportunity provide sufficient support for the conclusion that Congress—at least prior to 1981—had embraced the policy of maintaining teenage confidentiality in the Title X program.

*Planned Parenthood,* 712 F.2d at 660. Concerning the 1981 amendment to Title X the court concluded, "we see no evidence whatever that Congress intended to change its longstanding belief that confidentiality was a crucial factor in attracting teenagers to Title X clinics and thereby in stemming the epidemic increase in teenage pregnancies." *Id.* Instead, the court "firmly believe[d] that the express language of the statute, ..., refers to just such realistic concerns about deterring teenagers from seeking contraception if their confidences are not respected." *Id.* Consequently, the

---

**4.** The rule also prevented further prescriptions unless receipt of the notification was verified, required Title X grantees to comply with any state notification or consent law, and redefined the method for determining the eligibility of minors for Title X services. 42 C.F.R. § 59.-5(a)(12).

court concluded that the regulation "undermine[d] both Congress' specific policy of confidentiality and its overriding concern about the escalating teenage pregnancy rate." *Id.*, at 660–61. Discussing the part of the regulation that required Title X grantees to comply with state notification laws, the court said:

> It is elementary that under the Supremacy Clause of the Constitution states are not permitted to establish eligibility standards for federal assistance programs that conflict with the existing federal statutory or regulatory scheme.

> The only court to consider this issue [the validity of state parental notification and consent laws] in the context of Title X squarely concluded that West Virginia's attempt to require parental consent as a condition to the provision of family planning services constituted the imposition of an additional eligibility requirement that clearly thwarted the goals of Title X. *See Doe v. Pickett*, 480 F.Supp. 1218, 1220–1221 (D.W.Va.1979). Since we have concluded that, even after the 1981 amendment, the continuing policies of Title X prohibit the Secretary from requiring parental notification, the states would likewise be precluded from imposing similar conditions.

*Planned Parenthood*, 712 F.2d at 663–64 (some citations omitted). *See also, New York v. Heckler*, 719 F.2d 1191 (2d Cir. 1983).

The defendants argue that *Planned Parenthood* and *New York* are distinguishable because those cases challenged the actions of the Secretary and this case challenges a state law. While the court agrees that the cases are distinguishable in that respect, the court does not agree with the defendants' conclusion that the difference between this case and the others makes "congressional intent irrelevant" because the state must not comply with congressional intent. Congress has created a comprehensive federal program through which family

planning services are to be made available to eligible minors if voluntarily requested. H.B. 343 is in conflict with that federal program because it conditions access to those services on notification of the minor's parents.[5] Congressional intent in enacting Title X is relevant to determining whether the state law does major damage to substantial federal interests. As did the District of Columbia and the Second Circuits, this court concludes that the provision of family planning services to minors on a confidential basis was critically significant to Congress when it enacted and amended Title X. Consequently, the court finds that H.B. 343 would do major damage to the federal interests created by Title X by preventing Title X grantees from providing confidential services to eligible minors on request. In these circumstances, the Supremacy Clause dictates that the federal law prevail over H.B. 343.

In 1975, other judges of this court determined that a Utah law which required a minor seeking family planning services under either the AFDC or Medicaid programs to obtain parental consent prior to obtaining the services was unenforceable because it conflicted with the federal standards applicable to those programs. *T.H. v. Jones*, 425 F.Supp. 873 (D.Utah 1975), *aff'd on statutory grounds*, 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976). Concerning the AFDC program, the *T.H.* court said

> We observe two salient features of this provision.... First, the purpose behind Congress' requiring the states to provide family planning assistance is the prevention of births out of wedlock and, thereby, the strengthening of family ties. Second, the sole expressed precondition to the state's obligation to provide such services is that such persons voluntarily request family planning assistance.

*Id.* at 877. Regarding the Medicaid provisions, the court said

> to mandate notification of both parents and applies to both prescription and non-prescription contraceptives.

---

**5.** The requirements established by H.B. 343 are more restrictive than those proposed by the Secretary. H.B. 343 requires notification prior to distribution of the requested services, appears

Thus, we read the 1972 Medicaid amendments to establish two preconditions to the state's obligation to provide family planning assistance to sexually active minors. First, such persons must be eligible under the standards of section 1396a(a)(10); second such persons must voluntarily request assistance.

*Id.* at 878. The defendants have not brought to the court's attention any amendments to either the AFDC or the Medicaid provisions that alter the requirements identified by the court in *T.H.* The requirements of H.B. 343, therefore, conflict with the terms of the federal law by requiring parental notification prior to provision of the services requested by eligible minors.

After examining the legislative history of the 1972 amendments of the Social Security Act, the *T.H.* court concluded that

> [t]he legislative history of the 1972 amendments bears out Congress' concern that AFDC and Medicaid family planning services be provided to sexually active minors who desire them on a confidential basis; in this way Congress has sought to stem the rising number of births out of wedlock and the consequent increase in the number of welfare recipients.

425 F.Supp. at 878. The impact of requiring parental notice prior to providing services is as damaging to the federal "policies of confidentiality and comprehensive assistance to sexually active minors embodied in the 1972 amendments," *id.* at 879, as the parental consent requirement invalidated in *T.H.* Thus the Supremacy Clause dictates that H.B. 343 bow to the requirements of federal law.

The Constitutional Argument

The plaintiffs argue that H.B. 343 is unconstitutionally overbroad because it fails to distinguish between immature minors and either mature minors or immature minors who can demonstrate that parental notification is not in the minor's best interest. Although the Supreme Court has considered the validity of various regulatory laws directed at contraceptives, that Court has not addressed the argument advanced by the plaintiffs directly.

In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Supreme Court recognized a "zone of privacy created by several fundamental constitutional guarantees," *id.* at 485, 85 S.Ct. at 1682, that precluded a state from prohibiting the use of contraceptives by married couples. *Id.* Subsequently, the Court held that the zone of privacy encompassed unmarried as well as married persons. *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972). Applying the principle developed by *Griswold* and *Eisenstadt* in another situation, the Court stated that "[r]ead in the light of its progeny, the teaching of *Griswold* is that the Constitution protects individual decisions in matters of childbearing from unjustified intrusion by the State." *Carey v. Population Services International,* 431 U.S. 678, 687, 97 S.Ct. 2010, 2017, 52 L.Ed.2d 675 (1977).

As the *Carey* Court noted, "[r]estrictions on the distribution of contraceptives clearly burden the freedom to make such decisions." *Id.* at 687, 97 S.Ct. at 2017. Consequently, the Court held that as to adults, such laws must be justified by a compelling state interest and that the laws must be narrowly drawn to cover only the expressed state interests. *Id.* at 688, 97 S.Ct. at 2017. "This is so not because there is an independent fundamental 'right of access to contraceptives,' but because such access is essential to exercise of the constitutionally protected right of decision in matters of childbearing that is the underlying foundation of the holdings in *Griswold, Eisenstadt v. Baird,* and *Roe v. Wade* [410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ]." 431 U.S. at 688–89, 97 S.Ct. at 2017–18.

In *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), the Court recognized that the right of privacy protected by the Constitution extends to minors as well as to adults. *Id.* at 74–75, 96 S.Ct. at 2843–44. Although "the State has somewhat broader authority to regulate the ac-

tivities of children than of adults," *id.* at 74, 96 S.Ct. at 2843, there must be a "significant state interest ... that is not present in the case of an adult" to justify any burdens imposed on a minor's right to privacy. *Id.* at 75, 96 S.Ct. at 2844.

In the context of making an informed decision whether to have an abortion, the Supreme Court has held that "the State may not impose a blanket provision, ..., requiring the consent of a parent or person *in loco parentis* as a condition for abortion of an unmarried minor during the first 12 weeks of her pregnancy." *Id.* at 74, 96 S.Ct. at 2843. The Constitution prohibits such a law because "the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent." *Id.*

In *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*), the Supreme Court concluded that the Constitution would permit a state to require a pregnant minor to obtain parental consent before an abortion is performed, if the state provided a procedure whereby the minor could establish that she was mature enough to make the decision on her own or that it would be in her best interests to have the abortion. *Id.* at 643–44, 99 S.Ct. at 3048. The Supreme Court reaffirmed that position six months ago in *Akron v. Akron Center for Reproductive Health, Inc.,* —— U.S. ——, ——, 103 S.Ct. 2481, 2496, 76 L.Ed.2d 687 (U.S.1983).

Although the Supreme Court has not confronted the issue directly, it is clear that the rule applicable to parental consent laws also applies to parental notification laws.[6] As the *Akron* Court noted "[a] majority of the Court, however, has indicated that these state and parental interests [on which parental notice laws have been based] must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement." —— U.S. at —— n. 10, 103 S.Ct. at 2491 n. 10. Albeit in dictum, the *Akron* Court concluded "the statute requires that the minor's parents be notified ..., a requirement that in the case of a mature minor seeking an abortion would be unconstitutional." *Id.* at ——, 103 S.Ct. at 2498 n. 31.

Although this lawsuit involves the decision to use contraceptives, not the decision to have an abortion, in determining the constitutionality of laws regulating access to contraceptives, "[a]n instructive analogy is found in the decisions after *Roe v. Wade,* ..., that held unconstitutional statutes that did not prohibit abortions outright but limited in a variety of ways a woman's access to them." *Carey,* 431 U.S. at 688, 97 S.Ct. at 2017 (citations omitted). The court acknowledges that a decision concerning the use of contraceptives is not fraught with the time limitations inherent in a decision concerning termination of a pregnancy through abortion. Nonetheless, "decisions whether to accomplish or to prevent conception are among the most private and sensitive." *Id.* at 685, 97 S.Ct. at 2016. Moreover, in contrast to the decision to marry,[7] a decision concerning the use of contraceptives is similar to the decision whether to have an abortion in that it cannot be delayed until the minor reaches the

---

**6.** In *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981), the Court upheld a Utah law that required parental notification before an abortion could be performed on a minor, but only as applied to an immature, unemancipated minor. *Id.* at 413, 101 S.Ct. at 1173. Subsequently, the Court characterized the *H.L.* decision as "upholding a parental notification requirement but not extending the holding to mature or emancipated minors or to immature minors showing such notification detrimental to their best interests." *Planned Parenthood Ass'n of Kansas City, Missouri, Inc. v.*

*Ashcroft,* —— U.S. ——, ——, 103 S.Ct. 2517, 2525 n. 17, 76 L.Ed.2d 733 (U.S.1983).

**7.** The defendants cite *Moe v. Dinkins,* 533 F.Supp. 623 (S.D.N.Y.1981), *aff'd,* 669 F.2d 67 (2d Cir.) (per curiam); *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982) (upholding a New York law prohibiting the marriage of minors between the ages of 14 and 18 absent the consent of both parents), in support of their argument that the abortion cases are not apposite to the case before the court.

age of majority without posing the risk of serious harm to the minor. In *Moe v. Dinkins*, 533 F.Supp. 623 (S.D.N.Y.1981), *aff'd*, 669 F.2d 67 (2d Cir.) (per curiam), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982), the court distinguished the marriage decision from the abortion and contraception decisions on that basis. "Giving birth to an unwanted child involves an irretrievable change in position for a minor as well as for an adult, whereas the temporary denial of the right to marry does not." *Id.* at 630.

The undisputed evidence in this case confirms that whether to bear or to beget a child, not whether to be sexually active, is at the heart of the decision to use contraceptives. The facts demonstrate that minors seek contraceptives after becoming sexually active, not before. The facts also demonstrate that a significant percentage of sexually active minors would not cease their sexual activity if access to contraceptives is conditioned on parental notification. Instead, those minors would terminate their use of contraceptives. Thus, the effect of implementing H.B. 343 would not be to postpone a decision concerning whether to become sexually active until majority or to involve parents in their children's decision making on that matter.[8] Instead, the facts in the record demonstrate that implementing H.B. 343 would expose sexually active minors to the health risks of early pregnancy and venereal disease. The argument that those risks can be avoided if the minors abstain from sexual activity is without merit because "[i]t would be plainly unreasonable to assume that [the state] has prescribed pregnancy and the birth of an unwanted child as punishment for fornica-

tion...." *Eisenstadt*, 405 U.S. at 448, 92 S.Ct. at 1035.

In summary, the decision whether to use contraceptives is as intimate and personal as, and involves risks to the individual which are comparable to those raised by the decision whether to have an abortion. The court, therefore, is persuaded that the statements in *Akron* and *H.L.* concerning the constitutionality of parental notification laws in the abortion context support the conclusion that the state may not impose a blanket parental notification requirement on minors seeking to exercise their constitutionally protected right to decide whether to bear or to beget a child by using contraceptives.

H.B. 343 fails to provide a procedure whereby a mature minor or a minor who can demonstrate that his or her best interests are contrary to parental notification can obtain contraceptives confidentially. As such, H.B. 343 unconstitutionally infringes upon the right to decide whether to bear or to beget children.[9]

Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' motion for summary judgment be granted and that the defendants' motion for summary judgment be denied.

Counsel for the plaintiffs shall prepare and submit a proposed judgment in accordance with this decision within fifteen (15) days of notice of this decision.

---

8. The defendants also argue that parents should be involved in the contraceptive decision to help their children select the best method of contraception. There is no evidence in the record, however, that the doctors who prescribe contraceptives for minors are performing inadequately their obligation to consider the needs of their patients or that nonhazardous non-prescription contraceptives pose any unique health threat to minors. Thus, that interest is insufficient to warrant the intrusion imposed on minors' rights by H.B. 343.

9. The court does not intend to imply by this decision that a law which provided a means for minors to demonstrate maturity or best interests contrary to parental involvement would be constitutional. All that the court has decided is that due to the failure to provide such a process, H.B. 343 goes beyond the constitutionally permissible point of regulating the right of minors to make independent decisions concerning whether to bear or to beget children.