Dear Honorable Hamilton,
The Attorney General has received your request for an official opinion asking, in effect:
 Would a state entity receiving funds under Title X of the Public Health Service Act, 42 U.S.C.A. 300 et seq., be in violation of the Act if it complied with the provisions for consent of a minor's parents under 63 O.S. 2601 (1981) et seq.?
In 1970 Congress enacted Title X of the Public Health Act, entitled the "Family Planning Services and Population Research Act," codified at42 U.S.C.A. 300 et seq., to establish a nation-wide program with the express purpose of making or providing "comprehensive family planning services readily available to all persons desiring such services." Public Law No. 91-572 2, 84 Stat. 1506 (1970) 42 C.F.R. § 59.5(a)(4), provided that these services must be provided without regard to age.
Title 63 O.S. 2601 (1981) et seq., relate to health services for minors. A minor is defined as "any person under the age of eighteen (18) years of age, except such person who is on active duty with or has served in any branch of the Armed Services of the United States shall be considered an adult." See, 63 O.S. 2601(a) (1981). "Health services means services delivered by any health professional including examination,preventive and curative treatment, surgical, hospitalization, and psychological services, except abortion or sterilization." See 63 O.S.2601(c) (1981).
Title 63 O.S. 2602 (1982), gives a minor the right of self-consent to such services provided by health professionals in certain cases. In all other cases a minor must receive the consent of his or her parent(s) or guardian before receiving health services as provided by 63 O.S. 2601(c) (1981). Does this consent requirement for this latter group of minors violate the provisions of Title X of the Public Health Service Act?
We can examine cases decided in other jurisdictions to determine the intent and language of Title X. These cases challenged rules and regulations promulgated by the federal government pertaining to Title X.
The Secretary of Health and Human Services promulgated rules and regulations to Title X following a 1981 amendment to this Act. This amendment authorized the Secretary to make grants or enter into contracts with public or nonprofit private entities to assist in providing family planning methods and stated "to the extent practical, entities whichreceive grants or contracts under this subsection shall encourage familyparticipation in projects assisted under this subsection." (Emphasis added). 42 U.S.C.A. 300(a).
Two such regulations promulgated following the amendment, required Title X grantees to notify a parent or guardian within ten (10) days of initially prescribing contraceptives to unemancipated minors, and Title X recipients to comply with any state law that mandates notification or consent of parent or guardian upon provision of family planning services to a minor. 42 C.F.R. § 59.5(a)(12)(ii). These regulations were challenged in the case of Planned Parenthood Fed. of America v. Heckler,712 F.2d 650 (D.C. Cir. 1983) and State of N.Y. v. Heckler, 719 F.2d 1191
(2nd Cir. 1983).
In the Planned Parenthood case, the District of Columbia Circuit Court of Appeals found these regulations were inconsistent with Congress' intent and purpose in enacting Title X and were beyond the delegated authority of the Secretary of Health and Human Services.
The Court relied heavily upon the language of the 1981 Conference Committee report. Specifically addressing the 1981 amendment, the Committee stated "[t]he conferees believe that, while family involvementis not mandated, it is important that families participate in the activities authorized by this title as much as possible. It is the intent of the conferees that grantees will encourage participants in Title Xprograms to include their families in counseling and involve them in decisions about services." (Emphasis added). H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 799 (1981).
The Court wrote:
 "In enacting the amendment to encourage family participation, Congress most definitely did not intend to mandate family involvement. . . . Thus, to the extent that the parental notification requirement of the new regulations operates to require family involvement, it is inconsistent with Congress' intent. . . . There is simply no way, in light of the conferees' explanation that the statute can be read as intending to permit Title X projects to communicate directly with the parents as a means of fulfilling the statute's `family participation' directive." Planned Parenthood, supra at 657.
As to the requirement that Title X grantees must comply with state notification law, the Court wrote:
 "It is elementary that under the Supremacy Clause of the Constitution states are not permitted to establish eligibility standards for federal assistance programs that conflict with existing federal statutory or regulatory scheme. . . . [T]he continuing policies of Title X prohibit the Secretary from requiring parental notification, the states would likewise be precluded from imposing similar conditions." Id. at 663-664.
A similar decision regarding such federal rules and regulations was reached in State of N.Y. v. Heckler, supra.
Two federal district courts have examined state laws in light of Title X requirements.
A West Virginia court concluded that a policy of the State of West Virginia that attempted to require parental consent as a condition to the provision of family planning services constituted the imposition of additional eligibility requirements that clearly thwarted the goals and policies of Title X.
 "The State, in requiring parental consent with respect to the expenditure of monies under these federal programs (i.e., Title X), is imposing additional eligibility requirements not contemplated or articulated in the statutory or regulatory framework of such programs.
* * *
 "States and other grantees of funds under Title X of the Public Health Service Act . . . cannot impose a requirement of parental involvement as a precondition to the provision of family planning services to minors." Doe v. Pickett, 480 F. Supp. 1218, 1220, 1223
(D.W. Va. 1979).
The other federal district court examined a law passed by the Utah Legislature which stated in pertinent part:
 "Any person before providing contraceptives to a minor shall notify . . . the minor's parents or guardian of the services requested to be provided to such minor." Utah Code Ann. 76-7-325 (Supp. 1983); (hereinafter referred to as H.B. 343).
H.B. 343 does make notification an additional prerequisite to receipt of services relating to providing contraceptives.
This law was challenged. In declaring the H.B. 343 violated federal law, the Court in Utah wrote:
 "H.B. 343 is in conflict with that federal program because it conditions access to those services on notification of the minor's parents. Congressional intent in enacting Title X is relevant to determining whether the state law does major damage to substantial federal interests. As did the District of Columbia and the Second Circuits, this court concludes that the provision of family planning services to minors on a confidential basis was critically significant to Congress when it enacted and amended Title X. Consequently, the court finds that H.B. 343 would do major damage to the federal interests created by Title X by preventing Title X grantees from providing confidential services to eligible minors on request. In these circumstances, the Supremacy Clause dictates that the federal law prevail over H.B. 343." (Emphasis added). Planned Parenthood Ass'n of Utah v. Matheson, 582 F. Supp. 1001, 1006 (D.Utah 1983).
Indeed the Tenth Circuit has reviewed Title X in light of parental notification or consent in Jane Doe 1 through 4 v. State of UtahDepartment of Health, 776 F.2d 253 (10th Cir. 1985).
The Tenth Circuit Court wrote that all parties in this lawsuit agree that Title X services must be made available to eligible persons in Utah including minors who do not obtain parental consent and Title X prohibits the imposition of conditions that would have the effect of discrimination against adolescents in the condition of service and of breaching confidentiality in the developing of such services.
The court stated that if the mandatory parental consent was required for all contraceptive services to minors, there would be constitutional problems with such a requirement.
Clearly, decisions in other jurisdictions have shown that the imposition, by state law, of a condition of parental consent or notification before providing certain health services to a minor would violate the provisions of Title X of the Health Services Act,42 U.S.C.A. 300 et seq. Oklahoma's requirement under 63 O.S. 2601 (1981) et seq., that mandates parental consent before health services, as defined by 63 O.S. 2601(c) (1981), can be given to certain minors violates the provision of Title X of the Health Services Act, 42 U.S.C.A. 300 et seq.
It is, therefore, the official opinion of the Attorney General that theprovisions of 63 O.S. 2601 (1981) et seq., that require parental consentbefore health services can be offered to certain minors violate theprovisions of Title X of the Health Services Act, 42 U.S.C.A. 300 et seq.A state entity receiving funds under this Act would be precluded fromrequiring parental consent for certain minors before offering healthservices as defined by 63 O.S. 2601(c) (1981).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
RICHARD MILDREN, ASSISTANT ATTORNEY GENERAL